His Honor, JOHN ST. PAUL,
rendered the opinion and decree of the Court, as follows:
The deceased was the celebrated General Braxton Bragg of the Confederate States Army. Before entering the service of the Confederacy he was a commissioned officer in the United States Army and up to April 13th, 1861, had earned “longevity-pay” amounting to $1,072.05 under Section 15 of the Statute of July 15,1838, reading as follows: “Every commissioned officer of the line or staff, exclusive of general officers, shall be entitled to receive an additional ration per diem for every five years he may have served or shall serve in the army of the United States. * * *”
He died September 27th, 1876, but up to the time of his death and for many years thereafter the amount thus earned by him could not be collected because of the Statute of March 2nd, 1867 (Rev. Stat., 3480) reading as follows: -“It shall be unlawful for any officer to pay any .account, claim or demand against the United States, which accrued or existed prior to the 13th day of April, 1861, in favor of any person who promoted, encouraged, or in any manner sustained the late rebellion, or in favor of any person who during such rebellion was not known to be opposed thereto and distinctly in favor of its suppression, and no pardon heretofore granted or hereafter to be granted, shall authorize the payment of such account, claim or demand until this section is modified -or repealed * # *.”
But on July 6th, 1914, Congress passed a statute declaring ‘ ‘ that Section 3480 of the Revised Statutes of the United States be and the same is hereby repealed as far as it affects payments for services in the army of the United States prior to April 13th, 1861.”
*301 And thereafter the claim of General Bragg was allowed by the Government and paid to the administrator of his. estate.
II.
General Bragg left no descendants and his nearest blood relations are the descendants of his brothers and sisters.
His wife survived him and was recognized as his universal legatee or testamentary heir, under the terms of his will reading as follows:. “I give to my beloved wife Eliza Brooks Ellis, all property, money and effects of whatsoever kind I may own or possess at the time of my death.”
The widow died January 8th, 1908, and her brother William C. Ellis was recognized as her universal legatee, or testamentary heir, under the terms of her will reading as follows: “When all legacies are paid, I bequeath the remainder of my estate to my brother, William Ellis, or should he not survive me, to his children.”
III.
In this contest the brother of Mrs. Bragg claims the aforesaid “longevity-pay” as being property owned by Genóral Bragg at his death'and bequeathed to his widow. On the other hand the blood relations claim it as a “gratuity” forming no part of his estate, and thus inuring solely to themselves as “next of kin” to the party intended to be benefited.
IV.
As the additional ration allowed by the Act of 1838 was promised in consideration of services to be rendered, and *302 •thereafter .actually rendered, it was the fruit of a contract and therefore no gratuity when earned.
In this connection we quote from Fisk vs. Jefferson Police Jury, 116 U. S., 131, 133, as follows:
“We do not assert the proposition that a person elected to an office for a definite term has any such contract with the government, or with the appointing body, as to prevent the Legislature or other proper authority from abolishing the office or diminishing its duration (or pay) or removing him from office * * *.” “But after the services have been rendered under a law, resolution, or ordinance which fixes the rate of compensation, there arises an implied contract to pay for those services at that rate. This contract is a completed contract. Its obligation is perfect, and rests on the remedies which the law then gives for its enforcement. * * * ”
V.
On April 13th, 1861, General Bragg had therefore a vested right to so much “longevity-pay” as had then been earned, of which right Congress could not deprive him without .due process of law (U. S. Const., Amdt. 5).
Of course by suspending payment thereof, the Act of 1867 was quite .a.s effective in depriving him of his claim as would have been an outright. forfeiture thereof; at least for the time being. That is a stubborn fact, which no legal learning can ever overcome.
But 'Congress did not in terms forfeit the claim, on the contrary it carefully refrained from doing so, knowing full well that it could not. (U. S. Const., Art. 1, Sec. 9, Par. 3; Fletcher vs. Peck, 6 Cranch., 87; Cummings vs. Missouri, 4 Wallace, 277; Ex Parte Garland, 4 Wallace, 333.)
Hence the right existed unimpaired until extinguished by payment after the passage of the Statute' of 1914. *303 And hence that right was property belonging to the deceased at the time of his death.
Opinion and decree, March 27th, 1916.
Rehearing refused, April 24th, 1916.
Writ denied, May 24th, 1916.
Vi.
As to property belonging to the deceased at the time -of his death the claim passed to his widow under the terms of his will giving her “all property, money and effects of whatever kind he might own or possess at the time of his death.”
And by the terms of her will it passed to her brother as part of “the remainder of her estate.”
So thought the District Judge and so do we.
Judgment affirmed.